IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOBU ENTERPRISES PTY LTD. d/b/a OLÉ MEXICAN FOODS AUSTRALASIA, | § § § § | |
| Plaintiff, | § § | |
| V. | § | No. 3:23-cv-617-BN |
| JOHN GALT SOLUTIONS, INC., | § § § | |
| Defendant. | § § | |
| JOHN GALT SOLUTIONS, INC. | § § | |
| Counterclaimant, | § § | |
| V. | § § | |
| MOBU ENTERPRISES PTY LTD. d/b/a OLÉ MEXICAN FOODS AUSTRALASIA, | § § § § | |
| Counterclaim-Defendant. | § § | |

## MEMORANDUM OPINION AND ORDER

The same day that the jury returned its verdict [Dkt. No. 119], the Court entered an order allowing the parties to file by October 7, 2025 post-judgment motions, including for entry of judgment under Federal Rule of Civil Procedure 58 and for attorneys' fees and costs under Federal Rule of Civil Procedure 54(d), *see* Dkt. No. 115.

Under Federal Rule of Civil Procedure 50(b), Plaintiff and Counterclaim-Defendant Mobu Enterprises Pty Ltd. d/b/a Olé Mexican Foods Australasia ("Mobu")

renewed its motion for judgment as a matter of law solely on the breach of contract

award against it and in favor of Defendant and Counterclaimant John Galt Solutions,

Inc. ("John Galt"). *See* Dkt. No. 124.

Both Mobu and John Galt moved for attorneys' fees and costs. *See* Dkt. Nos.

125-127.

And the parties have briefed these motions. *See* Dkt. Nos. 129-140.

For the reasons set out below, the Court denies Mobu's renewed motion for

judgment as a matter of law. (And the Court will enter a separate order concerning

the motions for fees and costs.)

## Applicable Background

Each side brought breach of contract claims. And, to instruct the jury as to the

applicable law, the Court adopted the parties' jointly proposed language. *Compare*

Dkt. No. 103 at 14-15, *with* Dkt. No. 116 at 11.

> **Breach of Contract**
> If you find that Mobu did not prove that the [Subscription and
> Implementation Services Agreement (the "Subscription Agreement" or
> the "Agreement")] was induced by fraud and is therefore valid, you must
> then decide the breach of contract claims the parties have against each
> other pursuant to such contract.
> To prevail on its claim for breach of contract, a party must prove
> each of the following elements by a preponderance of the evidence:
> 1. The party making the claim fulfilled their obligations under
>    the Subscription Agreement;
> 2. The other party breached their obligations under the
>    Subscription Agreement; and
> 3. The party making the claim suffered damages as the direct
>    and proximate result of the other party's material breaches of
>    the Subscription Agreement.
> If you find that both parties have proven all elements of their
> breach of contract claims by a preponderance of the evidence, you must
> determine which party breached the Subscription Agreement first. Your

verdict must then be in favor of the party who breached the Subscription Agreement second.

Dkt. No. 116 at 11.

At trial, the jury returned its findings of fact through a Special Verdict Form [Dkt. No. 119] and found the following as to the breach of contract claims:

- After the jury was further instructed that "[a]n 'Agreement' is a meeting of the minds between two or more persons" and "may be oral, written, or implied from the conduct of the parties," it found that Mobu and John Galt agreed to the terms of the Agreement. *Id.* at 2.

- The jury then found that Mobu did not prove by a preponderance of the evidence that John Galt failed to comply with the Agreement. *See id.*

- But the jury did find that John Galt proved by a preponderance of the evidence that Mobu failed to comply with the Agreement. *See id.*

- And the jury found that Mobu's failure to comply was not excused. *See id.* at 3.

As to these findings, the jury was asked to determine "[w]hat sum of money, if any, if paid now in cash, would fairly and reasonably compensate John Galt for its damages, if any, that resulted from Mobu's actions? (Maximum amount $17,812.75)." *Id.* at 10. And the jury responded: $17,812.75. *See id.*

Under the standards of Rule 50, Mobu now argues that the Court must set aside the jury's verdict that it breached the Agreement.

**Legal Standards**

"Rule 50(a) allows a district court to grant a motion for judgment as a matter of law in a jury trial before a case is submitted to the jury with respect to a claim or defense raised in the case if 'a party has been fully heard on an issue during the trial'; 'the court finds that a reasonable jury would not have a legally sufficient evidentiary

- 3 -

basis to find for the party on that issue'; and 'under the controlling law, the claim or defense can be maintained or defeated only with a favorable finding on that issue.'" *MultiPlan, Inc. v. Holland*, 937 F.3d 487, 494 (5th Cir. 2019) (cleaned up; quoting FED. R. CIV. P. 50(a)).

And, where "a district court denies a Rule 50(a) motion, the movant may file a renewed motion for judgment as a matter of law within 28 days after the entry of judgment pursuant to Rule 50(b)." *Id.* (quoting FED. R. CIV. P. 50(b)); *cf.* Dkt. No. 115.

And, so, "Federal Rule of Civil Procedure 50(b) permits the entry, postverdict, of judgment for the verdict loser if the court finds that the evidence was legally insufficient to sustain the verdict." *Ortiz v. Jordan*, 562 U.S. 180, 189 (2011).

But "the party moving for judgment as a matter of law can prevail only if the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable jurors could not have arrived at a contrary verdict," *MultiPlan*, 937 F.3d at 494 (quoting *Williams v. Manitowoc Cranes, L.L.C.*, 898 F.3d 607, 614 (5th Cir. 2018)) – and therefore show that the "[e]vidence is legally insufficient," *N. Cypress Med. Ctr. Operating Co. v. Aetna Life Ins. Co.*, 898 F.3d 461, 473 (5th Cir. 2018).

Put another way, "to survive a Rule 50 motion, the party opposing the motion must at least establish a conflict in substantial evidence on each essential element of their claim." *Id.* (cleaned up). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (cleaned up).

A court is "'especially deferential' to jury verdicts" and will "'draw all reasonable inferences and resolve all credibility determinations in the light most favorable to the non-moving party.'" *Johnson v. Thibodaux City*, 887 F.3d 726, 731 (5th Cir. 2018) (quoting *Heck v. Triche*, 775 F.3d 265, 273 (5th Cir. 2014)).

And, so, a court will "uphold the verdict 'unless there is no legally sufficient evidentiary basis for a reasonable jury to find as the jury did' "or 'if the legal conclusions implied from the jury's verdict cannot in law be supported by those findings.'" *Id.* (quoting *Heck*, 775 F.3d at 727, then *Am. Home Assurance Co. v. United Space All., LLC*, 378 F.3d 482, 486-87 (5th Cir. 2004)).

### Analysis

As to the jury's verdict that it breached the Agreement, Mobu argues that this decision cannot be upheld because

> the Agreement did not authorize John Galt's invoices under its very terms. Agreement Section 4(B) provides: "Consulting services will be provided in accordance with a statement of work that is signed by both Parties and sets for obligations that [John Galt] is to perform and terms and conditions specific to such obligations." (*See* Pl.'s Ex. E, Agreement). Section 4(C) then provides that "[i]f [Mobu] should require additional services other than stated in an existing [Statement of Work, or SOW,], [John Galt] agrees to provide [Mobu] with cost estimates for all scope changes prior to commencement of such work. Each scope change needs to be signed by both Parties prior to the work and will be incorporated as an addendum to this Agreement."
>
> As established at trial, not one of the invoices for the consulting fees was supported by a signed – or unsigned – SOW. Indeed, Mobu had no notice of whatsoever of the "obligations that [John Galt] is to perform and terms and conditions specific to such obligations," never received any estimates for any scope changes, and never authorized any SOW. As a result, no viable breach of contract claim could lie over the invoices at issue. And to the extent John Galt attempts to argue that the invoiced amounts were due under an oral contract or in equity, such fail as the Agreement contained a merger clause that precluded reliance on any

extracontractual claims.

Because Mobu could not have breached the Agreement by refusing to pay fees that were not contractually due, the verdict cannot stand.

Dkt. No. 124 at 2.

John Galt counters, in part, that, because an SOW was not a condition precedent to payment, *see* Dkt. No. 130 at 8-9, evidence at trial – including witness testimony and documentary evidence, such as emails, invoices, and project records – "showed that Mobu: [a]greed to implementation work; [d]irected John Galt personnel to continue performing implementation tasks; [r]eceived and utilized the resulting work product; and [n]ever objected to invoices or questioned John Galt's authority to perform the work," and, so, Mobu knew, approved, and benefited from the consulting service, and "[t]he jury was entitled to weigh this evidence and conclude that the work was requested and therefore billable under the Agreement," *id.* at 6 (cleaned up); *see also id.* at 10 ("The evidence presented at trial permitted the jury to conclude that the absence of a formal SOW did not void the parties' agreement or extinguish Mobu's obligations. In fact the evidence presented in the form of written communications between the parties is clear evidence of implementation and consulting services which Mobu assented to and took advantage of – all of which were expressed in both the proposal and Agreement as additional costs. The evidence showed that the parties proceeded under the agreement, that John Galt performed implementation services, and that Mobu accepted and benefited from those services, and the jury was well within its right to conclude that Mobu breached the agreement between the parties." (cleaned up)).

And Mobu replies, in part, that,

> [b]ecause the Agreement unambiguously identifies when consulting work becomes billable, and because John Galt admits that those conditions never occurred, no reasonable jury could find that Mobu breached the Agreement by declining to pay charges the Agreement did not authorize. John Galt's silence on these documents is dispositive. The Agreement makes a signed SOW and a signed, prior addendum conditions precedent to any obligation to pay consulting fees, and conditions precedent must be "literally fulfilled" before liability attaches. *Hohenberg Bros. Co. v. George E. Gibbons & Co.*, 537 S.W.2d 1, 3 (Tex. 1976).

Dkt. No. 137 at 2.

"A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation." *James Constr. Grp., LLC v. Westlake Chem. Corp.*, 650 S.W.3d 392, 404 (Tex. 2022) (quoting *Solar Applications Eng'g, Inc. v. T.A. Operating Corp.*, 327 S.W.3d 104, 108 (Tex. 2010)); *accord Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 412 (5th Cir. 2009).

> A condition precedent may be either a condition to the formation of a contract or to an obligation to perform an existing agreement. Conditions may, therefore, relate to either the formation of contracts or to liability under them. Conditions precedent to an obligation to perform are those acts or events which occur subsequent to the making of a contract and which must occur before there is a right to immediate performance and before there is a breach of a contractual duty.

*Cajun Constructors, Inc. v. Velasco Drainage Dist.*, 380 S.W.3d 819, 825-26 (Tex. App. – Houston [14th Dist.] 2012, pet. denied) (citing *Hohenberg Bros.*, 537 S.W.2d at 3).

"A party seeking to recover under a contract bears the burden of proving that all conditions precedent have been satisfied." *Associated Indem. Corp. v. CAT Contracting, Inc.*, 964 S.W.2d 276, 283 (Tex. 1998).

And, so, "[i]f the condition is not fulfilled, the contract or obligation attached to

the condition cannot be enforced." *James Constr.*, 650 S.W.3d at 404 (quoting *CDI Eng'g Grp., Inc. v. Admin. Exch., Inc.*, 222 S.W.3d 544, 548 (Tex. App. – Houston [14th Dist.] 2007, pet. denied)); *see also Trinity Indus. Leasing Co. v. Hexion Inc.*, No. 3:17-cv-1936-S, 2020 WL 13468885, at *11 (N.D. Tex. Mar. 30, 2020) ("[I]f a party's performance is subject to a condition precedent and that express condition is not satisfied, then the party whose performance is conditioned is excused from any obligation to perform. Thus, a plaintiff cannot sue for a breach of contract if the plaintiff has not satisfied a condition precedent to the defendant's performance." (cleaned up)).

"In order to determine whether a condition precedent exists, the intention of the parties must be ascertained; and that can be done only by looking at the entire contract." *Conn Credit I, L.P. v. TF LoanCo III, L.L.C.*, 903 F.3d 493, 500 (5th Cir. 2018) (quoting *Solar Applications*, 327 S.W.3d at 109).

And, while "[n]o particular words are necessary for the existence of a condition," *Trinity Indus. Leasing*, 2020 WL 13468885, at *11 (quoting *Faulkner USA, LP v. Alaron Supply Co.*, 322 S.W.3d 357, 359 (Tex. App. – El Paso 2010, no pet.)), "Texas courts construe language such as 'if,' 'provided that,' 'on condition that,' or similar phrases to condition performance of a promise upon the occurrence of a prescribed event," and "[t]he phrase, 'subject to' is also sufficiently conditional to create a condition precedent, *Mullins*, 564 F.3d at 412 (concluding that "[t]he Note and Purchase Agreement contain the requisite conditional language making the terms of the Note, and thus TestAmerica's obligations thereunder, 'subject to'

- 8 -

TestAmerica's payment of all its 'debt facilities'"; citations omitted); *accord Conn Credit I*, 903 F.3d at 500 ("In order to make performance specifically conditional, a term such as 'if', 'provided that', 'on condition that', or some similar phrase of conditional language must normally be included." (quoting *Solar Applications*, 327 S.W.3d at 109)).

And, "where the intent of the parties is doubtful or where a condition would impose an absurd or impossible result, then the agreement will be interpreted as creating a covenant rather than a condition." *Trinity Indus. Leasing*, 2020 WL 13468885, at \*11 (cleaned up; quoting *Hohenberg Bros. Co.*, 537 S.W.2d at 3).

Under Texas law, "[t]he interpretation of a contract is a question of law." *Assicurazioni Generali, S.p.A. v. Ranger Ins. Co.*, 64 F.3d 979, 980-81 (5th Cir. 1995) (citation omitted).

And, under the legal standards set out above – and even though Mobu has not made this showing through its briefing – the Court could find that paragraph 4 of the Agreement, titled Contracting Services, could contain language that conditions the provision of consulting services on a statement of work (or "SOW") to the extent that paragraph 4(B) states that "[c]onsulting services will be provided in accordance with a statement of work 'SOW' that is signed by both Parties and sets for obligations that Supplier is to perform and terms and conditions specific to such obligations" and paragraph 4(D) states that, "[i]f Customer should require additional services other than stated in an existing SOW, Supplier agrees to provide the Customer with cost estimates for all scope changes prior to commencement of such work. Each scope

change needs to be signed by both Parties prior to the work and will be incorporated as an addendum to this Agreement." *Compare Conn Credit I*, 903 F.3d at 501 ("Conn's failure to refund canceled RSA accounts rendered its representations and warranties untrue…. Conn warranted that the accounts had 'been originated, serviced, and collected *in accordance with* all applicable laws.' To service a loan is 'to collect payments and maintain a payment schedule.' As explained, [Texas law] requires Conn to refund canceled RSA accounts. By maintaining account balances that did not reflect the required refund, Conn failed to service RSA accounts *in accordance with* applicable law. Accordingly, Conn did not satisfy the condition precedent," "and its claim for breach of contract fails." (citing *Mullins*, 564 F.3d at 413; emphasis added; footnotes omitted)).

Mobu would like to end the analysis here. *See* Dkt. No. 137 at 2.

But, in the context of a motion for judgment as a matter of law under Rule 50, that the Agreement could contain language that could qualify as a condition precedent that was not fulfilled is just the beginning of the analysis – even if the Court were to find that the language does qualify as a condition precedent.

> Conditions precedent are generally not favored under Texas law. But if, … a legitimate condition precedent exists, it must be either met or excused before the obligation that hinges on the condition may be enforced. Texas courts may excuse the performance of a condition precedent, however, only if the condition's requirement (a) will involve extreme forfeiture or penalty, and (b) its existence or occurrence forms no essential part of the exchange for the promisor's performance.

*Conn Credit I*, 903 F.3d at 502 (cleaned up); *see also Cajun Constructors*, 380 S.W.3d at 826 ("[C]onditions precedent are disfavored such that courts will not construe a contract provision as a condition precedent unless compelled to do so by language that

may be construed no other way." (citation omitted)).

And, while the interpretation of a contract is a legal question, "performance or waiver of a condition precedent is a fact question." *Sec. Bank of Whitesboro v. Hudgins*, No. 4:95 CV 341, 1998 WL 34262016, at *3 (E.D. Tex. July 1, 1998) (citing *Atomic Fuel Extraction Corp. v. Slick*, 386 S.W.2d 180, 185-87 (Tex. Civ. App. – San Antonio 1964, writ ref'd) ("Performance of conditions precedent can be waived. The waiver may be by words or deeds or both. It is immaterial how the promisor manifests his intention to fulfil the prior duty without the performance of the condition thereof. Whether he speaks of waiver or uses other words in this connection is of no consequence, if the undertaking to perform is made plain." (cleaned up))); *cf. Specht v. Maximus Inc.*, 344 F. App'x 873, 877 (5th Cir. 2009) (per curiam) ("Waiver is ordinarily a question of fact, but when the surrounding facts and circumstances are undisputed, ... the question becomes one of law." (quoting *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003) (per curiam))); *Chalker Energy Partners III, LLC v. Le Norman Operating LLC*, 595 S.W.3d 668, 673-74 (Tex. 2020) (Though "language stating that an agreement was 'subject to legal documentation' gave rise to a fact issue, language that no contract will arise until a formal agreement is executed makes clear the parties' intent that the contemplated formal document is a condition precedent to contract formation." (cleaned up)).

And, as John Galt sets out in its brief, and based on the Court's independent review, the record at trial contained substantial – that is, legally sufficient – evidence for the jury to find that, if the language that Mobu relies on qualifies as a condition

precedent under the applicable law, the parties' performance under the Agreement waived the enforcement of that condition precedent.

This is particularly the case where Mobu requested only very general instructions as to breach of contract and never requested that the Court charge the jury on conditions precedent. *See* Dkt. No. 116 at 11; Dkt. No. 119 at 2 ("To prevail on its claim for breach of contract, a party must prove each of the following elements by a preponderance of the evidence: [t]he party making the claim fulfilled their obligations under the Subscription Agreement; [t]he other party breached their obligations under the Subscription Agreement; and [t]he party making the claim suffered damages as the direct and proximate result of the other party's material breaches of the Subscription Agreement," while "[a]n 'Agreement' is a meeting of the minds between two or more persons" and "may be oral, written, or implied from the conduct of the parties."); *cf. Sunny Handicraft (H.K.) Ltd. v. Envision This!, LLC*, No. 14 C 1512, 2021 WL 10929882, at *4 (N.D. Ill. Mar. 5, 2021) (A purely legal issue "is not properly raised in a post-verdict motion under [Rules 50(b) and 59(a)]. Instead, [the litigant] should have raised this issue in its motion for summary judgment, before the case ever went to trial.  By waiting until after the jury's verdict to raise this issue, [the party] has waived it." (citations omitted)); *Carter v. Local 556, Transp. Workers Union of Am.*, 156 F.4th 459, 489-90 (5th Cir. 2025) ("[A] post-trial motion is not needed to preserve 'purely legal' challenges already resolved at summary judgment." (citing *Dupree v. Younger*, 598 U.S. 729, 734 (2023))).

And, so, the Court has no basis to grant Mobu's motion under Rule 50(b).

## Conclusion

The Court DENIES Plaintiff and Counterclaim-Defendant Mobu Enterprises Pty Ltd. d/b/a Olé Mexican Foods Australasia's renewed motion for judgment as a matter of law [Dkt. No. 124].

SO ORDERED.

DATED: May 11, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE