IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MOBU ENTERPRISES PTY LTD. d/b/a OLÉ MEXICAN FOODS AUSTRALASIA, | § | |
| Plaintiff, | § | |
| V. | § | No. 3:23-cv-617-BN |
| JOHN GALT SOLUTIONS, INC., | § | |
| Defendant. | § | |
| JOHN GALT SOLUTIONS, INC. | § | |
| Counterclaimant, | § | |
| V. | § | |
| MOBU ENTERPRISES PTY LTD. d/b/a OLÉ MEXICAN FOODS AUSTRALASIA, | § | |
| Counterclaim-Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

In this lawsuit proceeding before the undersigned United States magistrate judge for all purposes under 28 U.S.C. § 636(c), *see* Dkt. Nos. 54 & 56, a jury returned a verdict finding in part that Plaintiff and Counterclaim-Defendant Mobu Enterprises Pty Ltd. d/b/a Olé Mexican Foods Australasia ("Mobu") breached the parties' Subscription and Implementation Services Agreement (the "Agreement") (and, so, Defendant and Counterclaimant John Galt Solutions, Inc. ("John Galt") is entitled to damages of $17,812.75) and that John Galt violated the Texas Deceptive

Trade Practices Act ("DTPA") (and, so, Mobu is entitled to damages of $60,000). *See* Dkt. No. 119.

After the jury returned its verdict, Mobu renewed its motion for judgment as a matter of law solely on the breach of contract award against it and in favor of John Galt, *see* Dkt. No. 124; FED. R. CIV. P. 50(b), and both sides moved for attorneys' fees and costs, *see* Dkt. Nos. 125-127.

The Court denied Mobu's renewed motion for judgment as a matter of law. *See Mobu Enters. PYT Ltd. v. John Galt Solutions, Inc.*, No. 3:23-cv-617-BN, 2026 WL 1284866 (N.D. Tex. May 11, 2026).

So, in this lawsuit under Texas law, both sides remain eligible to collect attorneys' fees. *See* TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8); TEX. BUS. & COM. CODE § 17.50(d).

After considering the parties' submissions as to fees and costs, *see* Dkt. Nos. 125-28, 131-36, & 138-40, and for the following reasons, the Court denies John Galt's motion to strike and grants in part, denies in part the motions for attorneys' fees and costs, and requires the parties to meet and confer and file a joint report and proposed final judgment.

**Legal Standards**

Texas law applies to a request for fees as a prevailing party on a claim made under Texas law. *See Ingalls Shipbuilding v. Fed. Ins. Co.*, 410 F.3d 214, 230 (5th Cir. 2005) ("The award of attorneys' fees is governed by the law of the state whose substantive law is applied to the underlying claims." (footnote omitted)); *accord*

*Mathis v. Exxon Corp.*, 302 F.3d 448, 461 (5th Cir. 2002) ("State law controls both the award of and the reasonableness of fees awarded where state law supplies the rule of decision.").

"Texas law permits an award for attorney's fees only if authorized by statute or contract." *Bennigan's Franchising Co., LLC v. Team Irish*, No. 3:11-cv-364-D, 2011 WL 3903068, at *2 (N.D. Tex. Sept. 6, 2011) (citing *Int'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 653 (Tex. 2009); *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310-11 (Tex. 2006)).

And, "[w]hen a prevailing party in a breach of contract suit seeks attorney's fees, an award of reasonable fees is mandatory under § 38.001 [of the Texas Civil Practice and Remedies Code] if there is proof that the fees are reasonable." *Id.* at *3 (citations omitted); *Polaris Eng'g, Inc. v. Tex. Int'l Terminals, Ltd.*, 760 F. Supp. 3d 505, 507 (S.D. Tex. 2024) ("Under Texas law, each party generally must pay its own way in attorney's fees. But Chapter 38 creates an exception for breach-of-contract actions. TEX. CIV. PRAC. & REM. CODE § 38.001(b)(8)." (cleaned up)).

"In addition to the statutory right to recover attorney's fees under the provisions of § 38.001, '[p]arties are free to contract for a fee-recovery standard either looser or stricter than Chapter 38.'" *Bennigan's*, 2011 WL 3903068, at *2 (quoting *KB Home*, 295 S.W.3d at 653; citation omitted). In that case, "the terms of the contract, not statute, control the outcome of the case." *Id.* (cleaned up).

Likewise, a prevailing consumer under the DTPA "shall be awarded court costs and reasonable and necessary attorneys' fees." TEX. BUS. & COM. CODE § 17.50(d).

Under Texas law, a prevailing party authorized "to obtain attorney's fees from the opposing party" still "must prove that the requested fees are both reasonable and necessary." *Aircraft Holding Sols., LLC v. Learjet, Inc.*, No. 3:18-cv-823-D, 2023 WL 5311486, at *3 (N.D. Tex. Aug. 17, 2023) (quoting *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 489 (Tex. 2019) (in turn citing *In re Nat'l Lloyds Ins. Co.*, 532 S.W.3d 794, 809 (Tex. 2017))).

> The preferred method of federal courts calculating reasonable attorneys' fees under Texas law is the lodestar method. *See Fairmont Specialty Ins. Co. v. Apodaca*, 234 F. Supp. 3d 843, 852 (S.D. Tex. 2017) (citing *Rappaport v. State Farm Lloyds*, 275 F.3d 1079 (5th Cir. 2001) (per curiam)). The lodestar method is a two-step process. *Combs v. City of Huntington*, 829 F.3d 388, 391 (5th Cir. 2016). First, courts calculate the lodestar by multiplying the "number of hours reasonably expended ... by the prevailing hourly rate in the community for similar work." *Id.* at 392 (internal quotation marks omitted).

*Wease v. Ocwen Loan Servicing*, No. 3:13-cv-4107-B, 2021 WL 4991079, at *2 (N.D. Tex. Oct. 27, 2021).

There is a strong presumption of the reasonableness of the lodestar amount. *See Perdue v. Kenny A.*, 559 U.S. 542, 552 (2010); *Saizan v. Delta Concrete Prods., Inc.*, 448 F.3d 795, 800 (5th Cir. 2006).

And, "[i]f a party does not object to particular billing entries as inadequately documented, the court is not obligated *sua sponte* to sift through fee records searching for vague entries or block billing," so "[i]t is a common practice for courts to address only those potentially inadequate entries brought to the court's attention." *Hoffman v. L & M Arts*, No. 3:10-cv-953-D, 2015 WL 3999171, at *5 (N.D. Tex. July 1, 2015).

And the Court should not "eliminate wholesale the services of attorneys

without identifying the particular services which are regarded as duplicative." *Tasby v. Estes*, 651 F.2d 287, 289-90 (5th Cir. Unit A July 1981) (cleaned up).

Instead, "[p]ercentage reductions are appropriate when attorneys impermissibly engage in block billing or fail to exercise billing judgment" – including by failing to write off time spent on work that was redundant and in hindsight may have been unnecessary – or "when a court reduces excessive time spent on particular legal services" or for particular services that are "duplicative." *Fralick v. Plumbers & Pipefitters Nat'l Pension Fund*, No. 3:09-cv-752-D, 2011 WL 487754, at *13 (N.D. Tex. Feb. 11, 2011); *Shepherd v. Dallas Cnty., Tex.*, No. 3:05-cv-1442-D, 2009 WL 977294, at *2 n.3 (N.D. Tex. Apr. 10, 2009); *accord Saizan*, 448 F.3d at 799 ("The proper remedy for omitting evidence of billing judgment does not include a denial of fees but, rather, a reduction of the award by a percentage intended to substitute for the exercise of billing judgment." (cleaned up)); *Cookston v. Freeman, Inc.*, No. 3:98-cv-2106-D, 1999 WL 714760, at *5 (N.D. Tex. Sept. 14, 1999).

After calculating the lodestar, "Texas courts then apply the eight *Arthur Andersen* factors to determine whether the lodestar should be adjusted." *Wease*, 2021 WL 4991079, at *2 (citing *Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997); footnote omitted).

These factors are:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
> (2) the likelihood ... that the acceptance of the particular employment will preclude other employment by the lawyer;
> (3) the fee customarily charged in the locality for similar legal services;

> (4) the amount involved and the results obtained;
> (5) the time limitations imposed by the client or by the circumstances;
> (6) the nature and length of the professional relationship with the client;
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
> (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Id.* at *2 n.7 (formatting modified; quoting *Arthur Andersen*, 945 S.W.2d at 818).

"[T]he base lodestar figure accounts for most of the relevant *Arthur Andersen* considerations." *Rohrmoos*, 578 S.W.3d at 500.

"The relevant factors are similar to those articulated in *Johnson[ v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974), *overruled on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 90 (1989).]" *El Campo Ventures LLC v. Stratton Secs. Inc.*, No. 1:20-CV-00560-RP, 2022 WL 1518926, at *4 (W.D. Tex. Feb. 1, 2022) (footnote omitted), *rec. adopted*, 2022 WL 17735386 (W.D. Tex. Aug. 23, 2022).

And, in the end, the Court need only "provide a reasonably specific explanation for all aspects of a fee determination." *Portillo v. Cunningham*, 872 F.3d 728, 741 (5th Cir. 2017) (cleaned up).

So "rulings on fee awards need not 'be so excruciatingly explicit' that those decisions 'consume more paper than did the cases from which they arose.'" *Saldivar v. Austin Indep. Sch. Dist.*, 675 F. App'x 429, 432-33 (5th Cir. 2017) (per curiam) (quoting *In re High Sulfur Content Gasoline Prods. Liab. Litig.*, 517 F.3d 220, 228-29 (5th Cir. 2008)).

Instead, this Court's "analysis [must be] 'complete enough' for [the United

States Court of Appeals for the Fifth Circuit] to review 'whether the [C]ourt has used proper factual criteria in exercising its discretion to fix just compensation.'" *Id.* (quoting *Brantley v. Surles*, 804 F.2d 321, 325-26 (5th Cir. 1986)).

"Federal Rule of Civil Procedure 54(d)(1) permits a district court to provide costs, other than attorney's fees, to the 'prevailing party.'" *Mercer v. Patterson-UTI Drilling Co., L.L.C.*, 717 F. App'x 400, 406 (5th Cir. 2017) (per curiam).

And, in this circuit, the "rule is that: Unless a federal statute, the Federal Rules, or a court order provides otherwise, costs – other than attorney's fees – should be allowed to the prevailing party." *Vital v. Nat'l Oilwell Varco, L.P.*, 685 F. App'x 355, 360 (5th Cir. 2017) (per curiam) (cleaned up); *see also Cheatham v. Allstate Ins. Co.*, 465 F.3d 578, 586 (5th Cir. 2006) ("There is a strong presumption under Rule 54(d)(1) that the prevailing party will be awarded costs.").

28 U.S.C. "§ 1920 defines the term 'costs' as used in Rule 54(d)." *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 U.S. 437, 441 (1987).

Section 1920 allows a court to tax as costs certain enumerated categories of fees, including "[f]ees of the clerk and marshal," 28 U.S.C. § 1920(1); "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," *id.* § 1920(2); "[f]ees and disbursements for printing and witnesses," *id.* § 1920(3); and "[f]ees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case," *id.* § 1920(4).

And the United States "Supreme Court has indicated that federal courts may only award those costs articulated in section 1920 absent explicit statutory or

contractual authorization to the contrary." *Cook Children's Med. Ctr. v. The N. Engl. PPO Plan of Gen. Consolidation Mgmt. Inc.*, 491 F.3d 266, 274 (5th Cir. 2007) (cleaned up).

"Taxable costs are limited to relatively minor, incidental expenses as is evident from § 1920" and "are a fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators," such that "costs almost always amount to less than the successful litigant's total expenses in connection with a lawsuit." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 563 (2012) (cleaned up). In short, "taxable costs are limited by statute and are modest in scope." *Id.*

The party seeking recovery of costs bears the "burden of justifying the necessity of obtaining the depositions and copies at issue." *Fogleman v. ARAMCO (Arabian Am. Oil Co.)*, 920 F.2d 278, 286 (5th Cir. 1991). And the Court "may decline to award the costs listed in the statute but may not award costs omitted from the list." *Coats v. Penrod Drilling Corp.*, 5 F.3d 877, 891 (5th Cir. 1993) (cleaned up). That is,

> a district court may, but is not required to, deny a prevailing party costs where suit was brought in good faith and denial is based on at least one of the following factors: "(1) the losing party's limited financial resources; (2) misconduct by the prevailing party; (3) close and difficult legal issues presented; (4) substantial benefit conferred to the public; and (5) the prevailing party's enormous financial resources."

*Smith v. Chrysler Grp., L.L.C.*, 909 F.3d 744, 753 (5th Cir. 2018) (quoting *Pacheo v. Mineta*, 448 F.3d 783, 794 (5th Cir. 2006) (citing 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2668 at 234 (1998))).

In *Pacheo*, the Fifth Circuit "withheld judgment on whether 'any of the above factors is a sufficient reason to deny costs.'" *Smith*, 909 F.3d at 753 (cleaned up;

quoting *Pacheo*, 448 F.3d at 794 n.18). But the Court of Appeals later held that a district court may not deny a prevailing party "its costs because of its comparative ability to more easily bear the costs" – a holding that "is especially applicable in the light of the 'strong presumption that the prevailing party will be awarded costs.'" *Id.* (quoting *Pacheco*, 448 F.3d at 793). And the Fifth Circuit has "never held that the 'limited resources' of the losing party provide a basis for denying the prevailing party its costs." *U.S. ex rel. Long v. GSDMIdea City, L.L.C.*, 807 F.3d 125, 130 (5th Cir. 2015) (citation omitted).

## Analysis

### I. John Galt's motion to strike is denied.

The Court starts with John Galt's motion to strike two attorney declarations that Mobu submits to support the reasonableness of its fees because those attorneys were not disclosed under Federal Rule of Civil Procedure 26 [Dkt. No. 133].

As the Court did here, judges in this district have "typically treated the designation of attorney's fee experts differently from other experts. In most instances, as in the present case, Rule 54(d) provides that attorney's fees are decided by the court on motion filed after the entry of judgment." *Wright v. Blythe-Nelson*, No. 3:99-cv-2522-D, 2001 WL 804529, at *6 (N.D. Tex. July 10, 2001); *see* Dkt. No. 107 (final pretrial order) at 25 ("[A]ny claim for attorneys' fees will be decided by the Court on post-trial motions under Federal Rule of Civil Procedure 54(d)(2)," so "the parties need not and should not, during the jury trial, present witness testimony or exhibits directed to the matter of attorneys' fees.").

Under this approach,

> [a]ttorneys who represent parties against whom such fees are sought are not surprised by expert testimony because they can usually expect that opposing counsel will attempt to prove his attorney's fees and because they are themselves experts on the subject. Because the matter is handled by motion and usually decided on affidavits, the court can cure any prejudice that a party may face from a tardy designation by continuing submission of the attorney's fee issue if the party needs additional time to obtain its own expert.

*Wright*, 2001 WL 804529, at *6 (footnote omitted); *accord Giddy Up, LLC v. Prism Graphics, Inc.*, No. 3:06-cv-948-B, 2008 WL 656504, at *4-*5 (N.D. Tex. Mar. 12, 2008) (denying motion to strike attorney's affidavit in support of fee application after finding that, "based on [*Wright*'s] reasoning," the respondent was not "prejudiced by [the movant's] failure to disclose [an attorney] as a witness"); *see also Serna v. Law Office of Joseph Onwuteaka, P.C.*, 614 F. App'x 146, 157-58 (5th Cir. 2015) (per curiam) (affirming district court's denial of motion to strike where it "reason[ed] that attorney's-fee experts are treated differently from subject-matter experts and that [the respondent] suffered neither surprise nor prejudice"); *cf. Infante v. Samara Portfolio Mgmt., L.L.C.*, No. 1:14-CV-324, 2018 WL 911853, at *1 (E.D. Tex. Feb. 14, 2018) ("[A]ttorneys testifying solely on the topic of attorneys' fees are generally not required to provide expert reports. It is the custom and practice in this district and elsewhere not to require attorneys to provide expert reports on attorneys' fees. The Federal Rules of Civil Procedure only require the disclosure of experts and their reports if the expert will be used at trial." (cleaned up)).

The Court will certainly consider the parties' evidence regarding the reasonableness of their fees. But, as they know, the Court itself is "an expert as to

the reasonableness of attorney's fees." *Wachovia Bank, Nat'l Ass'n v. Schlegel*, No. 3:09-cv-1322-D, 2010 WL 4275277, at *2 & n.4 (N.D. Tex. Oct. 29, 2010) (applying Texas law; citing *Primrose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 562 (5th Cir. 2004) ("[T]rial courts are considered experts as to the reasonableness of attorney's fees." (applying federal law))).

## II. Even if segregation is neither appropriate nor possible, to properly determine the lodestar, the Court should consider the degree of success the prevailing party obtained.

Mobu filed this lawsuit

> asserting claims for violations of the [DTPA], breach of contract, breach of implied warranty of fitness for a particular purpose, breach of express warranty, negligent misrepresentation, unjust enrichment, promissory estoppel, fraud in the inducement of contract, and money had and received.
>
> John Galt countersued for breach of contract, alleging that Mobu failed to pay fees in the amount of $17,812.75, that Mobu was unjustly enriched, and that the filing of the Agreement and proposal from John Galt as part of Mobu's Complaint constituted a breach of the confidentiality provision contained within the Agreement. John Galt also alleged that Mobu failed to return John Galt property and failed [to] engage in alternative dispute resolution prior to filing suit.

Dkt. No. 107 at 4 (cleaned up).

As set out above, Mobu prevailed on its DTPA claim (and was awarded $60,000), and John Galt prevailed on its theory of breach based on Mobu's failure to pay $17,812.75 in fees (and was awarded that amount). *See* Dkt. No. 119.

Based on these partial victories, both sides now seek virtually all their attorneys' fees – more than $447,000 for Mobu and almost $134,000 for John Galt (not counting their requests for conditional appellate fees).

As to these seemingly disproportionate fee requests, Mobu asserts that,

because "[t]he jury found [John Galt] liable under the DTPA and awarded Mobu $60,000 in actual damages," "Mobu is entitled to all of its attorneys' fees and costs." Dkt. No. 125-1 at 8.

According to Mobu, "[f]ee entitlement under the statute is not discretionary – the only question before the Court is the amount." *Id.* (citation omitted).

Mobu further argues that, since its "claims were so intertwined," "its fees are not required to be segregated," *id.* at 10, and that "[t]he total verdict amounts may not be considered when calculating attorneys' fees," *id.* at 17.

That is because, Mobu asserts, "[t]he Fifth Circuit has expressly rejected a rule of proportionality between the fee awarded and the damages recovered in determining the award of attorney fees." *Id.* (citations omitted).

As a preliminary matter, these assertions require some clarifications – clarifications that are equally applicable to each side.

First, both the DTPA and Section 38.001 limit recovery to reasonable fees – "reasonable and necessary attorneys' fees" under the language of the DTPA. TEX. BUS. & COM. CODE § 17.50(d).

As set out above, "[r]easonable attorneys' fees are determined through a two-step process," under which the lodestar is first calculated. *Fessler v. Porcelana Corona De Mexico, S.A. DE C.V.*, 23 F.4th 408, 415 (5th Cir. 2022) (cleaned up).

If "correctly calculated," "[t]he lodestar is presumed reasonable, but the court may then enhance or decrease it after considering the twelve *Johnson* factors, of which "[t]he most critical factor in determining a reasonable fee is the degree of

success obtained." *Id.* at 415 & n.10 (cleaned up).

And, "[w]hile the most critical factor in determining an attorney's fee award is the degree of success obtained, a low damages award alone should not lead the court to reduce a fee award." *Gurule v. Land Guardian, Inc.*, 912 F.3d 252, 257-58 (5th Cir. 2018) (cleaned up); *see, e.g.*, *Badon v. Berry's Reliable Res.*, No. 23-30345, 2025 WL 2206972, at *4 (5th Cir. Aug. 4, 2025) (per curiam) ("[A]s the district court rightly noted, while proportionality is an appropriate consideration in assessing fee awards, we have consistently emphasized that there is no *per se* requirement of proportionality in an award of attorney fees." (cleaned up)).

And, so, where controlling cases make it clear that "proportionality is an appropriate consideration," the Court cannot agree that "[t]he total verdict amounts may not be considered when calculating attorneys' fees." Dkt. No. 125-1 at 17.

Relatedly,

> [i]t is axiomatic that work on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved and therefore no fee may be awarded for services on an unsuccessful claim. If unrelated to the successful claims, the unsuccessful ones must be treated as if they had been raised in separate lawsuits and excluded from the fee award. But when claims share a common core of facts or related legal theories, a fee applicant may claim all hours reasonably necessary to litigate those issues. When a [fee applicant's] claims cannot be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly.

*Fessler*, 23 F.4th at 416 (cleaned up).

And, so, while both sides disagree whether segregation applies (or doesn't) to their (or their opponent's) fees, even if the Court determines that technical segregation was not required – or cannot be determined based on the evidence

submitted – it may still adjust the lodestar based on the results obtained.

"Generally, parties seeking attorneys' fees are required to segregate their fees between recoverable and non-recoverable claims." *Wease*, 2021 WL 4991079, at *4 (citing *Chapa*, 212 S.W.3d at 311).

But, while "[i]ntertwined facts alone do not make fees for unrecoverable claims recoverable," "fees need not be segregated where 'discrete legal services advance both a recoverable and unrecoverable claim.'" *Id.* (quoting *Chapa*, 212 S.W.3d at 313-14; citation omitted).

And "[t]he party seeking to recover attorneys' fees bears the burden of demonstrating segregation is not required." *Id.* (citation omitted).

Even so, "[s]egregation evidence need not be extensive to be sufficient." *Anderton v. Green*, No. 05-19-01294-CV, 2021 WL 1115549, at *3 (Tex. App. – Dallas Mar. 24, 2021, no pet.) (citing *Chapa*, 212 S.W.3d at 314).

And "[a]n attorney need not keep separate time records; rather, 'it is sufficient to submit to the fact-finder testimony from a party's attorney concerning the percentage of hours that related solely to a claim for which fees are not recoverable.'" *Id.* (quoting *RM Crowe Prop. Servs. Co., L.P. v. Strategic Energy, L.L.C.*, 348 S.W.3d 444, 453 (Tex. App. – Dallas 2011, no pet.) (citing *Chapa*, 212 S.W.3d at 314).

"And '[w]here time spent on unsuccessful issues is difficult to segregate, no reduction of fees is required.'" *Chrisman v. Austin*, No. 6:22-cv-049-H, 2024 WL 3864614, at *11 (N.D. Tex. Aug. 16, 2024) (quoting *Abell v. Potomac Ins. Co. of Ill.*, 946 F.2d 1160, 1169 (5th Cir. 1991)).

Discussed below, Mobu applies a modest reduction to its fees based on segregation. But both sides insist that, while they were not required to segregate their fees, their opponent was. And neither side provides evidence that would be useful to the Court to undertake a segregation analysis.

Even so, based on the Court's familiarity with this matter, it makes some sense that it would be difficult to disentangle the claims here, which all share a common core – the business relationship between Mobu and John Galt.

And, again, where "claims cannot be disentangled, the district court's focus should shift to the results obtained and adjust the lodestar accordingly." *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 327 n.13 (5th Cir. 1995) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436-37 (1983) ("The district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success."); citations omitted)).

## III. As to the work already performed, Mobu is entitled to $302,395.80 in attorneys' fee, while John Galt is entitled to $93,766.40.

Starting with Mobu's request, it documents fees totaling $469,582.50, based on 1,051.2 hours, *see, e.g.*, Dkt. No. 125-1 at 15-16, but "applied a conservative five percent reduction to Thompson Hine's attorneys' fees to account for any residual, nonoverlapping contract-only time," *id.* at 13, so it seeks $447,410.62 in fees, *see id.* at 16.

And, so, the approximate blended rate Mobu puts forward prior to its self-imposed haircut is just over $446.71 per hour.

In the Court's opinion, *see, e.g., Primrose Operating*, 382 F.3d at 562, that's a

reasonable rate for business litigation in federal court in Dallas, Texas, especially in a case complex enough to survive summary judgment and proceed to a multi-day jury trial, *accord* Dkt. No. 127 at 24 (John Galt's attorney's decl.), ¶ 11 ("[B]ased on my training [and] experience[,] and in my professional opinion, a reasonable hourly billing rate in Dallas County, Texas for litigation similar to this lawsuit is between $300.00 and $500.00 per hour.").

And Mobu's request is supported by proper evidence: sworn statements from its attorneys and contemporary billing records (with minimal redactions). *See* Dkt. Nos. 125-2, 125-3, 125-4, 125-5, & 125-7.

Still, John Galt objects to this request on several specific bases other than segregation and the supporting evidence (also the basis for its unsuccessful motion to strike, as discussed above).

These start with John Galt's pointing out, "[b]y way of example, … ten billing entries (though not an exhaustive list)" that it contends are impermissibly block-billed. Dkt. No. 132 at 14-16.

First – applicable to all specific time entries that John Galt may point to that it contends are also illustrative of others – the Court is not obligated to assume that other allegedly infirmed examples exist in the billing records, as explained above. *See Tasby*, 651 F.2d at 289-90; *Hoffman*, 2015 WL 3999171, at *5.

So, while the Court will consider the particular billing entries John Galt objects to, it will not then go hunting for others.

Considering the specific entries John Galt argues are impermissibly block-

billed, "[t]he term 'block billing' refers to the disfavored 'time-keeping method by which each lawyer and legal assistant enters the total daily time spent working on a case, rather than itemizing the time expended on specific tasks.'" *Wyndham Props. II, Ltd. v. Buca Tex. Rests., LP*, No. 4:22-cv-166-BP, 2023 WL 2392090, at *3 (N.D. Tex. Mar. 7, 2023) (quoting *Hoffman*, 2015 WL 3999171, at *4 n.5 (in turn quoting *Fralick*, 2011 WL 487754, at *4)).

"Block billing prevents the court from accurately determining the time spent on any particular task, thus impairing the court's evaluation of whether the hours were reasonably expended." *Id.* (cleaned up).

But "most courts that have addressed block billing have concluded that denying all block-billed attorney's fees is not appropriate" and have instead reduced the block-billed hours by a percentage. *Id.* (quoting *Bramlett v. Med. Prot. Co. of Fort Wayne, Ind.*, No. 3:09-cv-1596-D, 2010 WL 3294248, at *3 (N.D. Tex. Aug. 20, 2010)); *see, e.g.*, *Bramlett*, 2010 WL 3294248, at *4 ("Little's affidavit provides no more than block-billed entries with general descriptions of activities relating to successive phases of the litigation. The large block of time each entry describes materially interferes with the court's ability to assess the reasonableness of the time expended. Moreover, the entries provide no dates for the work, hampering the court's ability to assess the time frame over which the time was expended. The court will therefore reduce Med Pro's request for Little's time by 25% and will award compensation only for 130.65 hours.").

And the Court cannot agree with John Galt that that these entries are block-

billed where they include the name of the timekeeper and a narrative description of the work performed and, except for two, the entries are for 3.3 hours or less – and many are much shorter.

But even the lengthier entries do not amount to impermissible block billing that "impair[s] the [C]ourt's evaluation of whether the hours were reasonably expended." *Wyndham*, 2023 WL 2392090, at *3; *see, e.g.*, *id.* at *4 ("After reviewing the entire record, Wick Phillips' entries include the attorney's initials, date, number of hours expended, and a brief description of the work performed. Further, the block-billed entries are not for large amounts of time. Often, Buca's entries are for fewer than six hours. The longer time entries offer more substantive, detailed descriptions of the different types of work performed during those periods by particular lawyers. The Court finds that the block-billed time entries do not make it 'impossible to conduct meaningful review and determine the precise number of hours that should be reduced.' Therefore, the Court does not reduce the fees claimed due to block billing." (cleaned up; quoting *Barrow v. Greenville Indep. Sch. Dist.*, No. 3:00-cv-913-D, 2005 WL 6789456 at *12 (N.D. Tex. Dec. 20, 2005)).

John Galt similarly argues that the record contains vague time entries, pointing to specific examples from Mr. Stokley. *See* Dkt. No. 132 at 16-18. But these particular entries are not so vague that they "impair[] the [C]ourt's evaluation of whether the hours were reasonably expended." *Wyndham*, 2023 WL 2392090, at *3. Nor will the Court look for others that could. *Cf.* Dkt. No. 132 at 17 ("[T]he entries of both Thompson Hine and Stokley LLP contain numerous vague entries warranting

reduction. The Stokley records alone contain over $6,825.00 of vague billing entries.").

Next, John Galt asserts that certain billing entries by attorneys ($1,700 billed by Ms. Schneider and $15,416 billed by Mr. Patton, who marshaled technology for Mobu at trial and even assisted John Galt with its technology) reflect clerical work that should not be included in the lodestar. *See id.* at 19-24.

"The term 'attorney's fee' has historically included fees for paralegal services." *Structural Metals, Inc v. S & C Elec. Co.*, No. SA-09-CV-984-XR, 2013 WL 3790307, at *8 (W.D. Tex. July 19, 2013) (citing *Richlin Sec. Serv. Co. v. Chertoff*, 553 U.S. 571, 582 (2008)).

"Under Texas law, compensation for a paralegal or legal assistant's work may be included in the award for attorneys' fees if the paralegal or legal assistant performed work that has traditionally been done by an attorney and the assistant is qualified through education, training, or work experience to perform substantive legal work." *Id.* (citations omitted).

But it's also well-established that "clerical entries … such as filing court documents, calendaring events, processing billing invoices, and requesting copies of documents" are "'not recoverable in an award of attorneys' fees.'" *Wyndham*, 2023 WL 2392090, at *5 (quoting *Black v. SettlePou, P.C.*, No. 3:10-cv-1418-K, 2014 WL 3534991, at *6 (N.D. Tex. July 17, 2014); citing *Tovar v. Sw. Bell Tel., L.P.*, No. 3:20-cv-1455-B, 2022 WL 2306926 (N.D. Tex. June 27, 2022)); *see also Vela v. City of Hous.*, 276 F.3d 659, 681 (5th Cir. 2001) ("Paralegal work can only be recovered as attorney's fees if the work is legal rather than clerical." (citing *Allen v. U.S. Steel Corp.*, 665 F.2d

689, 697 (5th Cir. 1982))); *Tovar*, 2022 WL 2306926, at *5 ("The court should consider whether the work performed was legal work in the strict sense or was merely clerical work that happened to be performed by a lawyer." (cleaned up; quoting *Abrams v. Baylor Coll. of Med.*, 805 F.2d 528, 536 (5th Cir. 1986))).

Mobu replies in part that

> [t]he trial-technology point underscores the weakness of [John Galt's clerical] argument. Mobu's technology professional handled exhibit presentation, video edits, demonstratives, and live trial support – functions courts routinely treat as compensable when they substitute for attorney labor. And at trial, opposing counsel relied on Mobu's trial-technology professional to present his own exhibits. A party cannot use a professional at trial and then tell the Court the same work was unnecessary. Moreover, nonlawyer time is compensable at market rates when it reflects substantive litigation-support work that substitutes for attorney effort; purely clerical tasks are not. Mr. Patton's entries reflect technical trial support, video editing, demonstratives, and live exhibit presentation – work that allows trial counsel to focus on examinations and argument.

Dkt. No. 138 at 4 (cleaned up).

This reply misses the mark to the extent that the issue is not whether Mr. Patton's work at trial was necessary – it's whether this work should be included in a request for attorneys' fees. And the dividing line is not who performed the work – it's whether the work performed was legal or clerical in nature.

And, when it comes to demonstratives or technology to be used at trial, the question should be whether a time entry reflects substantive legal work. If so, it's properly included in the fee application. *See Montano v. Orange Cnty., Tex.*, No. 1:13cv611, 2015 WL 11110631, at *5 (E.D. Tex. Apr. 24, 2015) ("Once Plaintiffs received the court's rulings, they had to decide, given their limited time left on the

trial clock, what to offer from Dr. Brown's deposition. Mr. Cade Bernsen's time entry reflects his efforts reviewing the rulings, comparing the rulings to the offered testimony, deciding which testimony to offer, and working with Complete Litigation Support – a video editing service – to ensure that the cut video accurately reflected the offered testimony. Mr. Cade Bernsen's work in this matter was not clerical in nature." (footnote omitted)); *cf. Giese v. TETRA Techs., Inc.*, Civ. A. H-20-2626, 2022 WL 2392038, at *5 (S.D. Tex. July 1, 2022) ("The court agrees … that the creation of demonstratives is intertwined with trial strategy, and it is reasonable for attorneys to spend time developing these tools. However, the disparity between hours charged by the attorneys and the legal assistant indicates that many of these hours were likely spent on clerical tasks rather than considerations of legal strategy, and such time ought to be billed at a lower rate.").

And the Court agrees with John Galt that, as to each specific time entry that it identifies as to Mr. Patton, *see* Dkt. No. 132 at 22-24, it has not been shown that the work described can be classified as legal, not just clerical.

But the Court cannot agree with John Galt that the specific time entries it identifies for Ms. Schneider, *see id.* at 19-21, should be classified as purely clerical, *see, e.g.*, *Winston v. State Farm Lloyds*, No. SA-20-CV-00515-JKP, 2022 WL 3327770, at *5 (W.D. Tex. Aug. 11, 2022) ("Dr. Winston concedes that 12 hours of paralegal time he billed is related to unrecoverable, clerical tasks such as preparing trial binders and performing technology services. The rest of the paralegal time is related to substantive work such as communicating with experts, drafting a notice letter,

conferring with the client, preparing court filings, reviewing discovery requests and responses, and preparing trial subpoenas.").

And, so, the Court will reduce Mobu's requested lodestar by $15,416.

John Galt also raises more generalized objections – without pointing to specific billing entries – based on what it characterizes as duplicative work, concluding that, "for a case with a primary amount in controversy of $90,000.00, incurring attorneys' fees at a collective hourly rate between $1,675.00 and $1,150.00 is simply not consistent with a client should expect to pay in a comparable case." Dkt. No. 132 at 24-25. John Galt then adds generalized arguments under the headers Segregation, Good Billing Judgment, and General Reasonableness. *See id.* at 25-28. And the Court accounts for these in its determination whether the lodestar should be adjusted under the *Johnson/Arthur Andersen* factors.

The base lodestar for Mobu is therefore $431,994.

Turning then to John Galt's request for fees, it seeks fees totaling $133,952, based on 382.72 hours at a reasonable rate of $350 per hour. *See* Dkt. No. 127 at 24; *Primrose Operating*, 382 F.3d at 562.

This request, too, is supported by proper evidence: a sworn statement from its attorney and contemporary billing records. *See* Dkt. No. 127 at 22-84.

But Mobu still asserts three specific objections.

The first – that John Galt is not entitled to fees at all because it is not a prevailing party, *see* Dkt. No. 128 at 8-9 – the Court overruled by denying Mobu's Rule 50(b) motion, *see Mobu Enters.*, 2026 WL 1284866.

The second – that the hours component of John Galt's requested lodestar is overinclusive because it failed to segregate for non-recoverable work, *see* Dkt. No. 128 at 4-6 – the Court has set up already and will resolve by adjusting the lodestar for both sides, as explained below.

And the third is that John Galt's billing records include $22,000 for nonrecoverable expert fees. *See id.* at 7-8. True, two invoices (for work performed in February 2025 and March 2025) document as "Expenses" $4,000 for "EXPERT FEE: Initial Expert retainer" and $18,000 for "EXPERT FEE: 'additional requested retainer' – Hessler." Dkt. No. 127 at 67-68. But John Galt explains that it

> is not seeking expert fees or any non-recoverable expenses as part of its Application for Attorneys' Fees and Costs. Any "expert" references that appear within the invoices are expense notations only, attached to the billing records for transparency, and are not included in the fee amount John Galt asks the Court to award.

Dkt. No. 140 at 5-6. And the Court's review of the evidence confirms this. So this objection is overruled.

In sum, after the Court reduces Mobu's requested amount by $15,416, its base lodestar is $431,994, and John Galt's remains $133,952.

And, to account for the limited results that each side obtained in this lawsuit, the Court will adjust the base lodestar amounts down 30% under *Johnson* and *Arthur Andersen* and will award Mobu $302,395.80 in fees and John Galt $93,766.40.

**IV. The Court does not grant conditional appellate fees.**

Both sides also request conditional fees related to their anticipated appeals, $56,000 for Mobu, *see, e.g.*, Dkt. No. 125 at 15-16, and $20,000 for John Galt, *see, e.g.*,

Dkt. No. 127 at 19.

Texas law permits "[c]onditional awards of appellate fees … as long as the award is supported by evidence of the fees' reasonableness." *S&P Investment Grp., LLC v. Kingdom Materials Holdings, LLC*, No. 4:21-cv-159-O, 2022 WL 2919498, at *9 (N.D. Tex. July 7, 2022) (quoting *Bank of N.Y. Mellon Trust Co., Nat'l Ass'n v. Meachum*, No. 3:20-cv-2250-L-BN, 2022 WL 743522, at *1 (N.D. Tex. Mar. 11, 2022) (in turn citing *Passmore v. Baylor Health Care Sys.*, No. 3:13-cv-5016-P, 2016 WL 8578058, at *2 (N.D. Tex. Jan. 5, 2016))), *rec. accepted*, 2022 WL 2918606 (N.D. Tex. July 25, 2022).

"In both *Passmore* and *Meachum*, the plaintiffs 'set[ ] forth in detail the basis for the amounts of fees sought for responding to postjudgment motions; handling the appeal ...; and handling any appeal to the Supreme Court.'" *Id.* (quoting *Meachum*, 2022 WL 743522, at *1.

Such evidence is lacking here, where each just side estimates the number of hours that would be billed and applies the applicable rates. *See id.* ("[C]onclusory statements are not 'evidence of reasonableness' and are certainly not 'set forth in detail.'" (quoting *Meachum*, 2022 WL 743522, at *1).

And, just as the court in *S&P* did, the Court denies the "conditional request[s] for post-judgment fees, without prejudice to [the movant's] right to subsequently file for such fees should the need arise." *Id.*

## V. As to costs, Mobu is entitled to $1,356, while John Galt is entitled to $6,129.02.

John Galt requests $6,129.02 in costs for deposition transcripts and video fees,

*see* Dkt. No. 127 at 24, costs that, it explains, "pertain to the deposition transcripts of each witness who testified during the trial phase of this litigation, and were inherently necessary for memorialization of testimony, preparation for trial and impeachment," *id.* at 18-19.

> In the Fifth Circuit, "prevailing parties are entitled to recover the costs of original depositions and copies under 28 U.S.C. § 1920(2) and § 1920(4), respectively, provided they were necessarily obtained for use in the case." *Fogleman*, 920 F.2d at 285 (internal quotations omitted). "[A] deposition need not be introduced into evidence at trial in order to be necessarily obtained for use in the case." *Id.* Costs associated with the deposition or copies thereof are taxable "[i]f, at the time it was taken, a deposition could reasonably be expected to be used for trial preparation, rather than merely for discovery." *Id.* "Whether a deposition or copy was necessarily obtained for use in the case is a factual determination to be made by the district court," and the district court has "great latitude" in making this determination. *Id.* at 285-86.

*Shenzen Synergy Digital Co., Ltd. v. Mingtel, Inc.*, No. 4:19-cv-00216, 2022 WL 2255252, at *2 (E.D. Tex. June 22, 2022) (citation modified); *see also Clouse v. So. Methodist Univ.*, 170 F.4th 367, 374 (5th Cir. 2026) ("[N]ecessity, not convenience, is the lynchpin of the discretion § 1920(2) confers on district courts." (citing *Allstate Ins. Co. v. Plambeck*, 66 F. Supp. 3d 782, 789-90 (N.D. Tex. 2014))).

The Court finds that John Galt's request meets these requirements and that it is entitled to $6,129.02 under Section 1920.

Mobu requests much more. It seeks $22,207.24 under Section 1920 and $16,448.15 related to witnesses under 28 U.S.C. § 1821. *See, e.g.*, Dkt. No. 125-1 at 18-20.

Its Section 1920 request is supported by Mr. Patton's declaration, in which he explains in part:

> I was the primary discovery attorney assisting with this matter. As such, I took the lead role in obtaining trial notebooks, preparing exhibits, purchasing supplies, and coordinating technology.
>
> I have reviewed all costs incurred in this matter, including those for research charges, filing fees, and copying fees. A true and correct copy of the costs incurred in this matter are attached hereto as Exhibit 1. Taking into account my attorney experience, these costs are commensurate with the costs I would customarily see in a matter of this nature.
>
> The total costs incurred in this matter, excluding witness costs, are $22,207.24.
>
> Those costs began incurring on December 19, 2022 and go through August 25, 2025, spanning almost three years. Given the fact that this case included multiple depositions, mediation, a motion for summary judgment hearing, and two trial settings for which costs were assessed, these costs are exceedingly reasonable.

Dkt. No. 125-9 at 2 (cleaned up).

Exhibit 1 [Dkt. No. 125-10 at 2] is difficult to decipher and difficult to describe.

So a sample is excerpted below.

| Date | TKPR Nam | Billed Amt | | Narrative |
|---|---|---|---|---|
| 12/19/2022 | Schneider, | $ | 22.04 | Vendor: FedEx; Invoice#: 798120613; Date: 12/19/2022 - Invoice No: 798120613 Date: 12/19/22 5228.22, 204 transactions, Account: 044 |
| 12/26/2022 | Schneider, | $ | 20.67 | Vendor: FedEx; Invoice#: 798887626; Date: 12/26/2022 - Invoice No: 798887626 Date: 12/26/22 2195.42, 86 transactions, Account: 0441 |
| 12/26/2022 | Schneider, | $ | 16.06 | Vendor: FedEx; Invoice#: 798887626; Date: 12/26/2022 - Invoice No: 798887626 Date: 12/26/22 2195.42, 86 transactions, Account: 0441 |
| 12/27/2022 | Schneider, | $ | 3.00 | MERCHANT: Texas Secretary of State Filing , Date: 12/27/2022; Secretary of State's Office - session: 121422SO2109 |
| 2/8/2023 | Schneider, | $ | 178.20 | Lexis search on 02/08/2023 - Service: SEARCH - Type of Charge: ACCESS CHARGE |
| 2/16/2023 | Schneider, | $ | 3.00 | MERCHANT: Texas Secretary of State, Date: 2/16/2023; Fee for searching for registered agent in Texas |
| 2/20/2023 | Schneider, | $ | 24.97 | Vendor: FedEx; Invoice#: 804467990; Date: 2/20/2023 - Invoice No: 804467990 Date: 02/20/23 522.02, 18 transactions, Account: 335742 |
| 2/27/2023 | Schneider, | $ | 45.97 | Vendor: FedEx; Invoice#: 805068781; Date: 2/27/2023 - Invoice No: 805068781 Date: 02/27/23 438.60, 14 transactions, Account: 335742 |
| 3/13/2023 | Fagundo, G | $ | 20.00 | Vendor: U.S. District Clerk; Invoice#: GFAGUNDO-GOOD; Date: 3/13/2023 - Request of Good Standing Certificate for Glianny Fagundo |
| 3/21/2023 | Stokley, Cr | $ | 402.00 | Vendor: U.S. District Clerk: Filing Fee for Complaint |
| 4/3/2023 | Fagundo, G | $ | 18.56 | Vendor: FedEx; Invoice#: 808812131; Date: 4/3/2023 - Invoice No: 808812131 Date: 04/03/23 256.79, 10 transactions, Account: 3357429 |
| 4/4/2023 | Stokley, Cr | $ | 227.00 | Service of Process |
| 5/25/2023 | Schneider, | $ | 0.10 | CIVIL CASE SEARCH |
| 5/25/2023 | Schneider, | $ | 0.20 | DOCKET REPORT |
| 5/25/2023 | Schneider, | $ | 1.70 | IMAGE1-0 |
| 5/25/2023 | Schneider, | $ | 1.60 | IMAGE1-1 |
| 5/25/2023 | Schneider, | $ | 0.40 | IMAGE1-3 |
| 5/25/2023 | Schneider, | $ | 3.00 | IMAGE1-2 |

Some descriptions in that document are sufficient to determine the nature of the expense. Many are not.

But it does seem that this list includes some costs that are allowed under Section 1920.

For example, the exhibit has numerous entries that could relate to depositions necessarily obtained for use in this case, but only one line item identifies the deponents – "634.00 Vendor: Goodenough & Associates; Invoice#: 11144; Date: 5/2/2024 - Deposition of Julieth Rodriguez & Alice Smith." Dkt. No. 125-2 at 9.

But the exhibit also contains requests that are not generally allowed. *See, e.g.*, *Long*, 807 F.3d at 133 ("As with the cost of expediting transcripts of depositions, incidental costs like shipping, binding, and tabbing are generally not taxable, as these costs are not listed in § 1920."); *Est. of Bellamy ex rel. Bellamy v. Ford Motor Co.*, No. SA-22-CV-00941-JKP, 2025 WL 3771434, at *2 (W.D. Tex. Aug. 18, 2025) ("Section 1920(1) allows recovery of 'fees of the clerk and marshal,' but does not expressly allow recovery of private process server fees," and, so, 'absent exceptional circumstances, the costs of a private process server are not recoverable under Section 1920.'" (quoting *Marmillion v. Am. Int'l Ins. Co.*, 381 F. App'x 421, 431 (5th Cir. 2010) (per curiam) (in turn citing *Cypress-Fairbanks Indep. Sch. Dist. v. Michael F.*, 118 F.3d 245, 257 (5th Cir. 1997)))); *cf. Vanderbilt Mortg & Fin., Inc. v. Flores*, Civ. A. No. C-09-312, 2011 WL 2160928, at *8 (S.D. Tex. May 27, 2011) ("Under Texas law, the term 'costs' generally refers to fees or charges imposed by a court or its officers, i.e., filing and service fees." But "[e]xpenses of litigation are not to be awarded as costs of court." (cleaned up)).

John Galt's response to this request is that

> only specific categories of litigation costs are recoverable, including clerk and marshal fees, transcript costs, printing, witness fees, and necessary copies. All other expenditures including electronic research, courier fees, travel, meals, and administrative expenses are not taxable.

> Nevertheless, Mobu claims over $7,000 in Lexis and legal research fees, excessive or duplicative FedEx/Delivery Charges ($900+), nearly $1,900 for printing binders, Mediation expenses of $3,250, Expert fees of $5,250.00 and a variety of miscellaneous administrative fees. After excluding the total expenses which are non-recoverable, at most, Mobu can potentially recover $3,300.00.

Dkt. No. 132 at 13.

And Mobu replies that

> the record and governing law support [its] requests. John Galt does not challenge the underlying documentation for these categories, and nothing in its response provides a basis to depart from §§ 1920 and 1821.
>
> Prevailing parties are presumptively entitled to recover taxable costs enumerated in 28 U.S.C. §§ 1920 and 1821, including clerk's fees, court-reporter fees for necessary transcripts, fees and disbursements for printing and witnesses, and costs of copies necessarily obtained for use in the case. Mobu's cost appendix itemizes filing fees, deposition and trial transcripts, witness fees, and copying expenses with contemporaneous documentation, and its claimed witness fees conform to § 1821's cap. (Doc. 125-3, pp. 74-76, 158).

Dkt. No. 138 at 8 (case citations omitted).

Mobu's citation to its billing records [Dkt. No. 125-3] does indicate that evidence that is more detailed than Exhibit 1 [Dkt. No. 125-10 at 2] may support its requests. And, while the Court will not comb through those records to find support for Mobu, its citation to a specific page range (74-76) does include the costs indicated above, to depose Ms. Smith and Ms. Rodriguez, who both testified at trial. (Page 158 does not offer support.)

And, so, the Court finds that Mobu has shown that, under Section 1920, it's entitled to the filing fee ($402) and the costs its evidence connects to Smith's and Rodriguez's depositions ($634).

Turning to Mobu's Section 1821 request, *see* Dkt. No. 125-1 at 20; Dkt. No. 125-

8,

> [a] trial witness shall be paid $40 per day for each day of attendance at trial, as well as the time spent traveling to and returning from the place of attendance. 28 U.S.C. § 1821. A witness who travels by public transportation shall be paid for the actual reasonable expenses of travel incurred at the most economical rate reasonably available and must provide a receipt or other evidence of actual cost. 28 U.S.C § 1821(c)(1). A witness who travels by privately owned vehicle shall be paid "a travel allowance equal to the mileage allowance which the Administrator of General Services prescribes, pursuant to section 5704 of title 5." 28 U.S.C. § 1821(c)(1). A trial witness shall be paid a subsistence allowance when an overnight stay is required. The subsistence allowance shall be paid "in an amount not to exceed the maximum per diem allowance prescribed by the Administrator of General Services, pursuant to section 5702(a) of title 5." 28 U.S.C. § 1821. When a corporate representative is not a controlling officer of the company, the prevailing corporation may recover the statutory attendance fee and subsistence allowance only for the days the corporate representative appeared as a witness. This does not include the cost of the corporate representative's travel expenses.

*Bellamy*, 2025 WL 3771434, at *6 (cleaned up).

Mobu is entitled to $320 for the total days its witnesses attended trial, as John Galt does not appear to object that Mr. Richardson qualifies as Mobu's controlling officer – and even though some witnesses appeared remotely, *see Matthews v. Int'l House of Pancakes, Inc.*, No. 4:04CV00711 SWW, 2006 WL 8444902, at *2 (E.D. Ark. May 19, 2006).

But Mobu has not shown that it's entitled to the travel, lodging, and subsistence amounts it seeks ($10,029.96 in travel and $3,306.77 in lodging for Mr. Richardson and $653.85 in travel, $1,840.25 in lodging, and $217.32 in subsistence for Mr. Matteson).

First, Mobu states that it "attaches the itemized costs for its witnesses' fees, travel, lodging, and subsistence costs as Exhibit D." Dkt. No. 125-1 at 19 (cleaned up).

But Mobu appears to leave out a declaration or affidavit to prove-up Exhibit D [Dkt. No. 125-8].

Regardless, Exhibit D only includes receipts pertaining to Mr. Richardson's airfare and lodging. So the Court cannot consider the travel, lodging, and subsistence requests for Mr. Matteson, as Section 1821(c) "requires that the party seeking to recover a witness's costs of travel must furnish evidence of actual cost." *GWTP Invs., L.P. v. SES Americom, Inc.*, No. 3:03-cv-1383-L, 2007 WL 9712172, at *3 (N.D. Tex. Jan. 30, 2007) (citation omitted), *rec. accepted*, 2007 WL 9712173 (N.D. Tex. Feb. 14, 2007); *see also, e.g.*, *Datapoint Corp. v. Picturetel Corp.*, No. 3:93-cv-2381-D, 1998 WL 401630, at *6 (N.D. Tex. July 9, 1998) ("Under § 1821(c)(1), the travel expense must reflect the most economical one available, and the prevailing party must prove the actual travel expenses. PictureTel failed to submit 'a receipt or other evidence of actual cost' supporting an award of costs for Wilson's airfare. Rowe's declaration that someone in her office called some travel agent and received an estimate regarding the price of airfares in April, 1998, does not meet PictureTel's burden of supplying the Court with a 'receipt' or 'evidence of actual cost' of Wilson's travel. The Court reduces PictureTel's Bill of Cost, accordingly, by $2,334.40." (footnote omitted)).

And Section 1821 does not authorize the more than $10,000 requested for Mr. Richardson's business class flights, at least where Mobu provides no evidence that this was "the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1); *see, e.g.*, *Datapoint*, 1998 WL 401630, at *5-*6; *Boltex Mfg. Co., L.P. v. Ulma Piping USA Corp.*, No. 4:17-CV-01400, 2020 WL 598284, at *9 (S.D. Tex. Feb. 7, 2020) ("The Court

agrees with Plaintiffs that the cost of Dr. Medlin's flights between Houston and Dallas, even using the 'Business Select' option on Southwest Airlines, is not unreasonable."), *amended by* 2020 WL 3525485 (S.D. Tex. Apr. 21, 2020).

Nor will the Court independently determine what the most economical flight would have cost. *See GWTP Invs.*, 2007 WL 9712172, at *3 ("When the purchase of a full-fare ticket is found not to be reasonable, courts will reduce the recoverable amount to the fare shown to be the most economical rate available on the travel date if there is evidence showing what that rate was. However, because the decision to award a witness's travel costs is discretionary, absent evidence of actual cost, some courts in this circuit have declined to make such an award." (citations omitted)).

Similarly, Section 1821 does not authorize reimbursement of Mr. Richardson's six-night stay in a Premier King room at the Joule for more than $3,300, well above the GSA per diem rate. Nor will the Court reduce this request consistent with the applicable GSA per diem rate for those nights where Mobu provides no evidence or argument on this point. *Cf. Structural Metals*, 2013 WL 3790450, at *5.

One final note on Mobu's requests under Section 1821: While the Court has discretion as to granting or denying witness fees, it also "must apply settled case law" even if "[i]nadequate briefing can cause parties to forfeit claims and arguments." *Joseph v. Bartlett*, 981 F.3d 319, 338 n.78 (5th Cir. 2020) (citation omitted); *see also Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) ("[W]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and

apply the proper construction of governing law.").

So it does not matter to the Court that John Galt appears not to address the insufficiencies as to Mobu's witness-related requests.

And, so, the Court concludes that Mobu has shown that it's entitled to $320 under Section 1821.

**Conclusion and Directions**

The Court DENIES Defendant and Counterclaimant John Galt Solutions, Inc.'s motion to strike [Dkt. No. 133] and GRANTS IN PART and DENIES IN PART the motions for attorneys' fees and costs filed by John Galt [Dkt. No. 126] and Plaintiff and Counterclaim-Defendant Mobu Enterprises Pty Ltd. d/b/a Olé Mexican Foods Australasia [Dkt. No. 125] to the extent that the Court awards John Galt attorneys' fees of $93,766.40 and costs of $6,129.02 against Mobu and awards Mobu attorneys' fees of $302,395.80 and costs of $1,356.00 against John Galt.

The Court is now prepared to enter a separate final judgment under Federal Rule of Civil Procedure 58.

Relatedly, the Court acknowledges the request for pre-judgment interest embedded in Mobu's fee application. *See* Dkt. No. 125-1 at 20-21.

And, while, even in diversity cases, "federal law determines post-judgment interest," *Giddy Up*, 2008 WL 656504, at *2 (citing *Boston Old Colony Ins. Co. v. Tiner Assoc., Inc.*, 288 F.3d 222, 234 (5th Cir. 2002)), both sides may be entitled to pre-judgment interest under Texas law, *see id.* at *1; *Reyelts v. Cross*, 968 F. Supp. 2d 835, 851-52 (N.D. Tex. 2013).

And, so, the Court ORDERS the parties to meet and confer and then file by **October 2, 2026** a joint report, attaching to that joint report a proposed final judgment that includes how interest should be properly calculated under applicable law. *Cf. Cont'l Cas. Co. v. Macon, Inc.*, No. 4:20-cv-86-A, 2020 WL 6437667 (N.D. Tex. June 24, 2020).

And this conference will also offer the parties one more opportunity to settle this case.

SO ORDERED.

DATE: September 18, 2026

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE